COOPER *v.* DURHAM.

1. TAXATION — TAX SALE — NOTICE TO REDEEM — DESCRIPTION OF PREMISES—SUFFICIENCY.

The description of the premises in a notice to redeem from tax sale, which gave the number of the unplatted block with reference to the plat of the city in which it was located and which also showed that said city is in Michigan, was sufficient to meet the requirements of the statute (1 Comp. Laws 1915, § 4019).[1]

2. SAME—QUIETING TITLE—JURISDICTION.

In a suit to quiet title to land, where the defendants by cross-bill attack the sufficiency of the proceedings taken by plaintiffs' predecessor more than 21 years ago to perfect his tax title, both in notice to redeem and subsequent suit to quiet title, the jurisdiction of the court in that case, *held,* clearly shown by the record.[2]

3. EQUITY—LIMITATION OF ACTIONS—CHANCERY SUITS—VALIDITY OF DECREE MAY NOT BE TESTED AFTER SEVEN YEARS.

Where the proceedings to perfect a tax title and quiet title to land were fair on their face, and defendants took no action to test the propriety or validity of the decree entered for more than 21 years, they are now barred by the provisions of 3 Comp. Laws 1915, § 12657, from doing so.[3]

Appeal from Muskegon; Vanderwerp (John), J. Submitted October 23, 1925.	(Docket No. 144.)	Decided June 7, 1926.

Bill by Henry Cooper and another against Frank J. Durham and another to quiet title to land. Defendants filed a cross-bill asking affirmative relief. From a decree for plaintiffs, defendants appeal.	Affirmed.

[1]Taxation, 37 Cyc. p. 1402; [2]Id., 37 Cyc. p. 1513; [3]Id., 37 Cyc. p. 1520.

*Lovelace & Broek,* for plaintiffs.

*Bunker & Rogoski,* for defendants.

STEERE, J.   Plaintiffs filed this bill in the circuit court of Muskegon county, in chancery, on June 30, 1923, to quiet their title to a lot in North Muskegon fronting 60½ feet on Ruddiman avenue and described by metes and bounds, being a part of "unplatted block fifty-five (55), city of North Muskegon, according to plat thereof."   Defendants answered in denial asking affirmative relief by cross-bill, to which plaintiffs filed answer.   The court granted plaintiffs the relief asked and defendants appeal.

Plaintiffs purchased their lot on May 10, 1921, from C. S. Prescott, single, and LeRoy A. Prescott and wife, who conveyed by warranty deed.   Their chain of title runs back through several mesne warranty deeds to Dayton Church, to whom the auditor general conveyed by tax deed, on December 12, 1900, entire unplatted block 55 of North Muskegon, the block being sold for unpaid taxes of 1890-1895-1897 and 1899. Said tax deed was recorded in the office of the register of deeds of Muskegon county on December 12, 1901. Some time thereafter Church gave notice by publication to the parties entitled to redeem under the last recorded instrument in the original chain of title, naming and advising them in said notice that they were entitled to redeem within six months after notice on making payment of the taxes and penalty as the law provided.   Return of the sheriff showing he was unable to make personal service of the notice and printer's affidavit of publication were duly filed.

On January 9, 1902, after the six months' time for redemption had expired, Church filed a bill to quiet his title to said block 55, setting up the facts as outlined and making the same parties defendants whom he had named in the notice of time to redeem.   On

return of the sheriff to the subpœna placed in his hands that after diligent search and inquiry he was unable to find any of the defendants in his bailiwick and make personal service, an affidavit of nonresidence, etc., was filed and an order of publication issued, which was complied with and proof of publication filed. None of the defendants having appeared, their default was duly taken on June 9, 1902, by an order *pro confesso* and the case brought on to be heard. A decree in usual form quieting title in favor of plaintiff Church was signed and filed June 10, 1902, and later recorded in the register of deeds' office.

Said block 55 was then unimproved and uninclosed, there was no activity in real estate in that locality or market for such property and it was of comparatively little value. Church finally sold the entire block 55 to a colored man named Isaac W. Berd, for what price is not stated, and conveyed it to him by warranty deed, thus starting the chain of title which by mesne warranty deeds ran down to plaintiffs' purchase of their lot in 1921 on which to build a residence, as they did, at a cost of over $7,000. When they bought their lot the value of the property had much increased, although the block was yet vacant and unimproved. Cooper testified "there were no buildings on the property at that time." Its increasing value moved some of the original fee owners of block 55 in efforts to reestablish, or maintain, their fee title and there was other litigation over this property, which is unimportant here except as it may have cast a disturbing shadow on plaintiffs' title which inspired them to file this bill.

That the original fee title traced down from a United States patent rests in defendants is not disputed, although it came to them by inheritance since plaintiffs purchased their lot. Defendants' counsel challenge the sufficiency of the proceedings taken by

Church to perfect his tax title, both in notice of time to redeem and subsequent suit to quiet title. It is first claimed the notice to redeem is fatally defective because neither county nor State are named in it, citing from decisions where this court so held in the cases before it. In those cases only sectional descriptions from governmental surveys were given, with no other identifying matter indicating where the land was located, which were held too indefinite because they might apply to land in any State where the Federal sectional system of land survey obtained. The description in this notice is of a block in the survey of a named city—"unplatted block fifty-five (55), city of North Muskegon, according to plat thereof." It gives the amount due, the years of unpaid taxes for which it was sold, and is subscribed, "Dayton Church. Place of business: North Muskegon, Mich. Arthur Jones, Atty. for purchaser."

Our tax law relative to description of real estate for assessment purposes provides in section 25, subd. 4 (1 Comp. Laws 1915, § 4019):

"In case of land platted or laid out as a town, city, or village, or as an addition to a town, city or village, the same shall be described by reference to such plat and by the number of the lots and blocks thereof."

This description fairly meets that requirement. It gives the number of the unplatted block with reference to the plat of the city of North Muskegon, and the notice shows that North Muskegon is in Michigan, which is the address of the holder of the described tax deed. No extrinsic proof is required to identify the property or to convey to the mind of the owner that proceedings affecting it are pending, which is the test (*Jackson* v. *Sloman,* 117 Mich. 126). It would be a valid description in a written memorandum of sale and purchase of the property (*Duncombe* v. *Tromble,* 219 Mich. 8).

Defendants attack the jurisdiction of the court to render its decree of June 10, 1902, quieting Church's title to said block 55 on the ground that service by publication of both the notice to redeem and process in the chancery case were invalid. The invalidity of service of notice to redeem is based on failure of the sheriff to date his return, which does not show when he received the notice for service. In his signed return the sheriff certifies officially—

"that after diligent inquiry I am unable to ascertain the whereabouts or postoffice address of (stating the names), named in the foregoing notice or any of their heirs or the whereabouts or postoffice address of any of the executors, administrators, trustees or guardians of any of them."

Neither the original return or the notice upon which it was presumably indorsed are before this court, but Church's bill of complaint filed January 9, 1902, alleges the return to the notice to redeem was made on January 23, 1901, and on that date,—

"filed in the office of the clerk of said county, in direct pursuance of the provisions of said statute, reference to which return and to notice referred to in said return, and now on file in the office of said clerk, for greater certainty is hereby made."

The record in said chancery suit also shows:

"Subpœna in due form issued Jan. 9, 1902, returnable Jan. 20, 1902. Returned and filed on Jan. 21st, 1902. Return of the sheriff being in the words following: 'After diligent search and inquiry, I am unable to find defendants, or either of them, in my bailiwick.' "

The affidavit of nonresidence, made by Arthur Jones, of Muskegon, in said county, states the dates of issue of the subpœna and its return day, followed by the sheriff's return *non est inventus,* and that he himself had made—

"diligent search and inquiry to ascertain the present residence or whereabouts of each and all of said defendants, and that deponent is informed and believes that the defendants, Frank Jones Johnson, Eva Eldred, Grace Esther Ryerson, Wilson H. Stubbings and Petruella Durham (defendant's mother) were all formerly residents of the city of North Muskegon in said county and State, and that a few years ago they removed from there to the city of Chicago, Illinois, but that their exact address is unknown to this deponent."   *   *   *

That he also was informed and believes that the other defendants named resided outside the State, in Chicago, Illinois, except one, who was in Wisconsin.

The usual order of publication was signed by the circuit judge January 23, 1902, proof of publication was filed March 8, 1902, and default, or order *pro confesso*, of defendants was filed and entered on June 9, 1902. A hearing followed on the bill taken as confessed with decree as stated. The original files were in the office of the county clerk and presumably the court was fully advised as to the regularity of the proceedings when hearing was had. On the face of this record the court clearly had jurisdiction in that case which was concluded by final decree on June 10, 1902. The instant case was commenced on June 30, 1923, over 21 years later. Those proceedings being fair on their face under the statutory provisions then existing and no proceedings having been taken by the then defendants or their representatives within seven years thereafter, they are now barred from testing the propriety or validity of that decree. The bill recited facts adequate to give the court jurisdiction to render such decree, and presumptively they were shown to the satisfaction of the court when the case was heard.

Whatever rights our statutes give or the court in its discretion may grant a defendant upon whom substituted service was had to appear and answer

within the first seven years after final decree was rendered and recorded, where the court had jurisdiction, the following mandatory statute ends that litigation:

·"The defendant, or his representatives, must so appear within one year after notice in writing of the decree shall have been given to him or them, and within seven years after the making of the decree, when such notice shall not be given."　3 Comp. Laws 1915, § 12657.

The decree appealed from will stand affirmed, with costs to plaintiffs.

BIRD, C. J., and SHARPE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.

Justice MOORE took no part in this decision.